Hillsborough, } No. 3887.
April 4, 1950. }

THEODORE S. BOURN *v.* JOHN C. DUFF.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wadleigh orally),* for the plaintiff.

*McLane, Davis, Carleton & Graf (Mr. Carleton orally),* for the defendant.

DUNCAN, J.   The defendant contends that his undertaking to make weekly payments to the plaintiff, reasonably construed, is to make such payments for a reasonable period only, because "it was the expectation of the parties that if the plaintiff survived . . . he would be able to return to his former duties within a reasonable length of time." The Trial Court ruled, however, that "the defendant is obligated to pay to the plaintiff the sum of $40 weekly out of the earnings of the business . . . [remaining after deduction of $90 per week salary of the defendant] until the plaintiff is able to return to work and assume his former duties."

The defendant's express agreement to pay the plaintiff $40 a week "until such time as . . . [he] is able to return to work and assume his duties as formerly conducted by him" cannot be gainsaid.   In compliance he had paid the plaintiff a total of $8,120 by the time he stopped payment in March, 1948.   The plaintiff at the time of the hearing was fifty-eight years of age and the defendant fifty-three. Should the plaintiff live for another ten years without being able to resume work, the defendant will have been required to pay him over $30,000 in total.   Such an undertaking, the defendant contends, cannot reasonably be found to have been intended by the parties.   Reliance is placed upon the principle followed in *McDonald* v. *Company,* 91 N. H. 411, 412: "As between a construction resulting in 'inconvenience, hardship, or absurdity' and one which avoids such a result, the latter is adopted 'because men in general do not enter freely into contracts which are absurd or frivolous.' *Kendall* v. *Green,* [67 N. H. 557, 563], quoted in *Robinson Company* v. *Drew,* 84 N. H. 459, 462." See also, *Anderson* v. *Insurance Company,* 75 N. H. 375, 378.   He therefore argues that his obligation to make payments to the plaintiff was intended to be limited to such a period as would afford the plaintiff a reasonable opportunity to recover, and that this obligation has been fully performed.

While it might be found upon the evidence and pleadings that when the parties executed the agreement of May 12, 1944, they hoped or expected that unless the plaintiff's illness proved fatal, he would be able to return to work within a comparatively short time, there is no

evidence of any basis for such an expectation, and it does not follow that they overlooked the contingency of a prolonged illness. No claim is made that the contract should be reformed or cancelled by reason of any fraud, mistake, or overreaching on the part of either party. The defendant, as a business man engaged in preparing a business contract, must be deemed to have taken into account the contingency which must have been fully apparent that the plaintiff's illness might keep him from work for an extended period of time. *Bee* v. *Chicopee Mfg. Corp.*, 94 N. H. 478, 481. The interpretation of the contract which the defendant urges should be made would substitute for his undertaking to make weekly payments to the plaintiff "until such time as . . . [he] is able to return to work," an undertaking to pay only for a period reasonably sufficient to permit his recovery. In *Lemire* v. *Haley*, 91 N. H. 357, 361, 362, it was said: "In the nature of things obligations arising from contractual relations cannot justly and reasonably be displaced by other obligations. . . . There is no law or judicial power by which considerations of equity may reform contracts which are free from legal attack on the grounds of fraud and mistake. What parties would have done with more information of facts or with better knowledge of the law, is no concern of the courts." "A rule permitting partial repudiation in order to equalize benefits and burdens would be an inroad upon the foundation of contractual liability." *Reynolds* v. *Chase*, 87 N. H. 227, 231.

The relief which the defendant seeks must come, if at all, not so much from interpretation of the contract, since its provisions are plain and unambiguous, but rather from reformation of its terms, or excuse from literal compliance because of hardship or a forfeiture. "Where language is of doubtful meaning, unquestionably a fair meaning rather than a harsh one is properly chosen on ordinary principles of interpretation. It is reasonable to suppose in such a case that the parties meant what was fair rather than what was not. Where, however, the language of the contract is not ambiguous, and the court refuses to apply it in a particular instance because it works hardship, the court under the disguise of interpretation is in fact giving relief from the terms of the contract on principles analagous to those which have influenced courts of equity in relieving from forfeiture." 3 Williston, Contracts (Rev. *ed.*) 2263.

The record in the case before us falls short of establishing that performance by the defendant of his undertaking will result in any hardship to him the possibility of which was not evident at the time the agreement was executed. There is no evidence from which the value

of the partnership interest conveyed by the plaintiff to the defendant can be determined with any certainty. The agreement provided for payment to the plaintiff or his wife of $1,200 certain, plus additional sums in indeterminate amount. It further provided that in the event of the plaintiff's resumption of his duties he should repay to the defendant for a reconveyance of his half interest "all payments . . . made to him from the earnings of the Bourn Company." While it is argued that these provisions fix the value of the plaintiff's interest at $1,200, they are equally consistent with recognition of a higher value. The agreement was one which might prove to be more beneficial to one party than the other, depending upon the course of the plaintiff's illness. The plaintiff ran the risk that in the event of his death within a thirty week period the defendant would acquire his interest for a minimum of $1,200. The defendant ran the risk that in the event of a prolonged illness he would be required to pay substantially more than this amount for the half interest which he acquired. In view of the nature of the agreement, the probability that the value of the plaintiff's interest was considered to be only $1,200 is slight.

It appears that the partnership was established in 1939 with capital of $9,000, of which $3,000 was borrowed from a third party and subsequently repaid. It also appears that the liabilities upon the real estate acquired by the partnership amounted in 1944 to over $13,000. There is no evidence as to the value of its assets, or of the earnings of the business prior to the agreement of May 12, 1944, except as it appears that the partners withdrew an average of $9,000 a year. After the plaintiff's retirement the business employed between twenty-two and thirty-three employees and gross receipts ranged from $128,000 to $175,000 annually.

This evidence does not require a finding that performance of the defendant's express undertaking will require him to pay more for the plaintiff's interest than it was worth, or amount to hardship or a forfeiture which entitles him to be relieved of his undertaking in equity. While statements may be found in the cases that specific performance will not be granted where hardship will thereby be imposed (see *Manchester Dairy System* v. *Hayward*, 82 N. H. 193, 206), the rule does not extend to hardship which results from an improvident bargain fairly and voluntarily assumed by contract. In such a case "however unfortunate or oppressive may be its terms the parties must abide by their engagement as it is written." *Chubb* v. *Peckham*, 13 N. J. Eq. 207, 209; 49 Am. Jur. 75. See note, 65 A. L. R. 7, 69. As was said in *Marble Co.* v. *Ripley*, 10 Wall. (U. S.) 339, 356-7: "It may be

doubted . . . whether the hardship of the contract is any greater than must have been contemplated when it was made. It is not unconscionable because . . . [one party] obtains larger profit from it than was at first expected, or because the other party obtains less. These were contingencies the possibility of which might have been foreseen. . . . Of that they took their chances." Furthermore hardship cannot here be assumed in the absence of evidence of inadequacy of consideration.

However, the decree for specific performance must be set aside for reasons other than those heretofore considered. "The granting of a specific performance of a contract . . . is not a matter of right to which the party is entitled when he has proved his contract, but is always a matter of sound and reasonable discretion on the part of the Court, in the exercise of which discretion it grants or withholds relief according to the circumstances of each particular case." *Eastman* v. *Plumer*, 46 N. H. 464, 478. "Unless the applicant for a decree for specific performance shows that his remedy at law is inadequate he is not entitled to the relief sought. 'This is the ground of this branch of equity jurisdiction.' *Eckstein* v. *Downing*, 64 N. H. 248, 260." *Blanchard Co.* v. *Company*, 80 N. H. 161, 166.

The decree here entered calls for specific performance of an undertaking to pay money. Furthermore it presupposes continuous operation of the business by the defendant, and according to conditions incorporated in the decree calls for payment only if such operation results in earnings in excess of $90 a week or $4,680 a year. While the decree does not expressly require the defendant to conduct the business, such a requirement must be implied, and would undoubtedly present problems of enforcement of a sort that courts of equity will not ordinarily assume. See *Manchester Dairy Systems* v. *Hayward*, 82 N. H. 193, 204, 205; Pomeroy, Spec. Perf. (3d *ed.*) ss. 23, 307, 312. If the business should fail to produce earnings sufficient to permit payment to the plaintiff, the issue of the cause of the failure would be at once presented; and the Court would be faced with determination of the good faith of the defendant and the economic problems of the business. Whatever course the plaintiff might choose to follow to secure enforcement of a decree for specific performance, the relief obtainable would remain uncertain because control of the business will rest with the defendant.

Sufficient has been said to indicate that the case is not one for the specific performance required by the second paragraph of the decree. The plaintiff's remedy at law for damages for breach of contract is not

shown to be inadequate. The performance presently required by the contract consists of the continuing payment of money. As to any breach after the date of the decree it appears to us to be "more consonant to justice that the . . . [plaintiff] should be compensated by . . . judgment in an action at law." *Texas &c. Ry. Co.* v. *Marshall*, 136 U. S. 393, 405. The second paragraph of the decree is vacated.

The plaintiff excepted to the rulings by which payments to him were held to be subject to the requirement that they be paid from earnings, and "earnings" were defined as surplus earnings after the payment of $90 a week to the defendant. The defendant excepted to the decree in its entirety, taking the position that he is under no obligation to make further payment. His exception to the first paragraph of the decree requiring him to pay the plaintiff forthwith a sum equal to $40 a week from March 23, 1948 to the date of the decree (Feb. 7, 1949), is accompanied by exceptions to the denial of his requests for findings or rulings that "at the present time there are not sufficient earnings out of which to pay the plaintiff the sum of $40 a week," and that "the insufficiency of such earnings began in March, 1949, and have continued to date."

In this connection the Court ruled, subject to the defendant's exception, that "the earnings of the business for purposes of this contract . . . are not restricted to earnings for any particular unit of time within that period" and that "thus computed," there are "enough earnings [from May 12, 1944] . . . to pay the weekly payments due the plaintiff to the date of this decree."

According to the evidence the earnings in the first forty-four weeks in 1948 were not sufficient to pay the plaintiff $40 a week after withdrawal of $90 a week for the defendant; but the use of surplus earnings from prior years, remaining after deduction of $90 a week for the defendant and payment of $40 a week to the plaintiff during those years, would permit the payment required by the first paragraph of the decree. Thus to determine whether the order contained in the first paragraph of the decree should stand it is necessary to consider the interpretation given to the contract by the court below.

Since a majority of the court are of the opinion that the contract was correctly interpreted, all exceptions to the rulings and denial of rulings, and to the first paragraph of the decree are overruled. In overruling the defendant's exception to the first paragraph of the decree, the minority concurs, being of the opinion that the requirements held to be implicit in the contract are unwarranted implications, and that the defendant's obligation to pay the plaintiff for the

202

period involved is not dependent upon the availability of earnings from the business.

The damages which the plaintiff suffered prior to the date of the decree are determinable in accordance with the first paragraph of the decree, upon which judgment may be entered. *Chartier* v. *Marshall*, 56 N. H. 478.

No opinion is expressed as to any unasserted right of the plaintiff to recover damages at law for anticipatory breach of the defendant's undertaking to reconvey the plaintiff's partnership interest in the event that he becomes able to resume his former work. Until the rights of the parties with respect to the plaintiff's option are brought in issue the plaintiff is entitled to the injunction contained in the third paragraph of the decree.

*Decree sustained in part and vacated in part.*

LAMPRON, J., did not sit.